UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------- X
      :
**DWIGHT RIDDICK**,
      :
                Plaintiff,
      :
      :  **MEMORANDUM DECISION AND ORDER**
         – against –
      :
      :  20-CV-5396 (AMD)
**ANDREW SAUL**,
      :
                Defendant.
      :
----------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

The plaintiff challenges the Social Security Commissioner's decision that he was not disabled for purposes of receiving benefits under Title II of the Social Security Act. For the reasons explained below, the plaintiff's motion for judgment on the pleadings is granted in part, and the defendant's motion is denied.

## BACKGROUND

On January 29, 2018, the claimant filed a Title II application for disability and disability insurance benefits, alleging disability because of "high blood pressure, a joint problem, a back problem, [and] a psychiatric problem," with an onset date of April 12, 2017. (Tr. 10, 82, 157-58.)

After his claim was denied on May 21, 2018 (Tr. 78-89), the plaintiff requested a hearing in front of an Administrative Law Judge ("ALJ"). (Tr. 90-92.) ALJ Sujata Rodgers held a hearing at which a vocational expert and the plaintiff, who was represented by counsel, testified. (Tr. 30-59.) In a December 2, 2019 decision, the ALJ denied the plaintiff's claim for benefits (Tr. 7-27), using the Commissioner's five-step sequential evaluation process. (Tr. 12-27.)

After determining that the claimant met the insured status requirements of the Social Security Act, the ALJ found at step one that the claimant had not engaged in substantial gainful activity. (Tr. 12.) At step two, the ALJ found that the claimant had the following severe impairments: degenerative disc disease of the lumbar and cervical spine, bilateral knee impairments, depressive disorder and posttraumatic stress disorder ("PTSD"). (Tr. 12-13.) At step three, the ALJ determined that none of these impairments met or equaled an applicable listing. (Tr. 13-15.) At step four, the ALJ concluded that the claimant had the residual functional capacity ("RFC") to "occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds." (Tr. 15-21.) The ALJ also concluded that the plaintiff could "sit, stand and walk for 6 hours each in an 8-hour workday," that he could "occasionally climb ramps, stairs, ladders ropes and scaffolds; balance; stoop; kneel; crouch; and crawl," that he could "occasionally push/pull with the left lower extremity," but that he must avoid "concentrated exposure to hazards, such as heavy machinery, moving mechanical parts, and unprotected heights." (*Id.*) The ALJ further concluded that the claimant could "understand, remember and carry out simple and routine instructions for 2-hour intervals over the course of an 8-hour workday and 40-hour workweek," and that he could "tolerate occasional interaction with coworkers, supervisors and the general public." (*Id.*) At the fifth and final step, the ALJ found that there were jobs in the national economy that the plaintiff could perform. (Tr. 21-22.)

On September 15, 2020, the Appeals Council denied the plaintiff's request for review. (Tr. 1-4.) The plaintiff filed this action on November 6, 2020 (ECF No. 1), and both parties moved for judgment on the pleadings. (ECF Nos. 11, 13.)

## STANDARD OF REVIEW

A district court reviewing the Commissioner's final decision is limited to determining "whether the SSA's conclusions were supported by substantial evidence in the record and were

2

based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)). The district court must uphold the Commissioner's factual findings if they are supported by substantial evidence. 42 U.S.C. § 405(g). This is true "even if there also is substantial evidence for the plaintiff's position." *Cerqueira v. Colvin*, No. 14-CV-1134, 2015 WL 4656626, at *11 (E.D.N.Y. Aug. 5, 2015) (internal quotation marks omitted). "Substantial evidence is 'more than a mere scintilla' and 'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). Nevertheless, the district judge may not "substitute [her] own judgment for that of the [ALJ]," even if she would have made a different decision. *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991).

While "factual findings by the Commissioner are 'binding' when 'supported by substantial evidence,'" the Court will not defer to the ALJ's determination "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004) (alteration in original) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)). Therefore, even if the Commissioner's decision is supported by substantial evidence, remand is warranted if "the ALJ has applied an improper legal standard" or if "there are gaps in the administrative record." *Price v. Berryhill*, 298 F. Supp. 3d 517, 525 (E.D.N.Y. 2018) (internal quotation marks omitted) (quoting *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999)).

3

# DISCUSSION

The plaintiff claims that the ALJ's decision was not supported by substantial evidence. (ECF No. 11-1 at 19-26.) Specifically, he challenges the ALJ's conclusion that the plaintiff's impairments or combination of impairments did not meet or equal the severity of a listed impairment. (*Id.* at 19-21.) He also challenges the ALJ's RFC analysis. (ECF No. 11-1 at 18-19, 21-26.) The defendant maintains that the ALJ's decision is supported by substantial evidence. (ECF No. 13-1 at 19-20.)

## I.  The ALJ's Evaluation of Impairments

According to the plaintiff, the ALJ did not consider whether a closed period of disability was appropriate under Listing 1.04(A) (ECF No. 11-1 at 20), and did not give proper consideration to Listings 1.04(A) and 12.15. (*Id.* at 19-21.) He also asks that the ALJ consider new Listings 1.15, 1.16 and 1.18 on remand. (*Id.* at 20.)

When an ALJ finds that a claimant has a medically determinable impairment that is "severe," the ALJ must determine whether the identified "impairment(s) meets or equals a listed impairment in appendix 1." 20 C.F.R. § 404.1520(a)(4)(iii). Each impairment in the appendix "is sufficient, at step three, to create an irrebuttable presumption of disability" under the Social Security regulations. *DeChirico v. Callahan*, 134 F.3d 1177, 1180 (2d Cir. 1998) (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)). "The regulations also provide for a finding of such a disability per se if an individual has an impairment that is 'equal to' a listed impairment." *Id.* (citing 20 C.F.R. § 404.1520(d) ("If you have an impairment(s) which . . . is listed in appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.")).

While an ALJ "should set forth a sufficient rationale in support of [her] decision to find or not to find a listed impairment," failure to do so does not prevent a court from upholding her

4

determination as long as the Court can "look to other portions of the ALJ's decision and to clearly credible evidence in finding that [her] determination was supported by substantial evidence." *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112 (2d Cir. 2010) (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982)).

As noted above, the ALJ found that the claimant had the following severe impairments: degenerative disc disease of the lumbar and cervical spine, bilateral knee impairments, depressive disorder and PTSD. (Tr. 12-13.)

### a. Disorders of the Spine

Under Listing 1.04(A)—"Disorders of the spine"—a claimant is presumptively disabled if he has "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or vertebral fracture[], resulting in compromise of a nerve root . . . or spinal cord" with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04(A).[1] To establish this listing, a plaintiff must demonstrate that he has (1) nerve root or spinal cord compromise, with (2) neuro-anatomic distribution of pain, (3) limitation of motion in his spine, and (4) motor loss, accompanied by sensory or reflex loss and a positive straight-leg raising test. *Id.*; *cf. Sanders v. Comm'r of Soc. Sec.*, 506 F. App'x 74, 76 (2d Cir. 2012) ("Under Listing 1.04(A), such a disorder can be demonstrated by evidence of nerve root compression accompanied by sensory or reflex loss.").

---

[1] Listing 1.04(A) was replaced by Listing 1.15 effective April 2, 2021. *See* 85 Fed. Reg. 79063, 2020 WL 7209986 (noting replacement of Listing 1.04 with 1.15); *Jones v. Kijakazi*, No. 20-CV-1765, 2021 WL 3856252, at *8 n.6 (D.S.C. Aug. 30, 2021) (same). However, because the plaintiff's claim was brought before that the effective date, the Court applies Listing 1.04 to this case.

The ALJ determined that the medical evidence did "not establish" the requirements under Listing 1.04(A) because the evidence "has repeatedly shown full five out of five strength on physical examinations with symmetric reflexes and intact sensation," that the plaintiff had a "benign or normal gait," and that abnormal findings occurred within "generally within 12 months of the claimant's car accident during a period of acute trauma and recovery." (Tr. 14.)

It is true that the plaintiff's strength was repeatedly rated "five out of five" between April 19, 2017 and September 20, 2018 (Tr. 256, 705, 707, 722, 821, 830, 833), and on April 19, 2017, the plaintiff had "sensation and motor [sic] grossly intact." (Tr. 672.) However, the record also shows that the plaintiff had radiculopathy between April 19, 2017 and September 20, 2018 (Tr. 252, 256, 715, 822, 824, 828, 830, 833); a May 10, 2017 EMG/NCV test that showed "evidence of a chronic bilateral C5 and C6 radiculopathy without active denervation" (Tr. 783), and positive Spurling test results between April 19, 2017 and July 24, 2017. (Tr. 253, 256, 713, 715, 717.) A May 2017 MRI showed "[m]ultilevel degenerative spondylitic change with herniation cord compression and asymmetry." (Tr. 729.) The plaintiff also had "mild bilateral sensory median nerve neuropathy at the wrist," which was "consistent with the clinical diagnosis of Carpal Tunnel Syndrome" (Tr. 783), and reduced sensation in the C5 dermatomal distribution, and L5 dermatomal distribution on the right side, as late as January 11, 2018. (Tr. 707, 713, 715.) In examinations between April 19, 2017 and August 9, 2018, the plaintiff had limited range of motion in his spine. (Tr. 253, 255, 705, 707, 713, 717, 821, 824, 827, 830, 833, 836, 838.)

The ALJ did not address this evidence, which conflicts with her conclusions. *See Critoph v. Berryhill*, No. 16-CV-00417, 2017 WL 4324688, at *3 (W.D.N.Y. Sept. 28, 2017) (explaining that when there is evidence that the plaintiff's "symptoms appear to match those described in a

listing, the ALJ must explain a finding of ineligibility based on the [l]istings" (quoting *Cardillo v. Colvin*, No. 16-CV-134, 2017 WL 1274181, at *4 (N.D.N.Y. Mar. 24, 2017))); *see also Szarowicz v. Astrue*, No. 11-CV-277S, 2012 WL 3095798, at *5 (W.D.N.Y. July 30, 2012) ("It is particularly important for an ALJ to specifically address conflicting probative evidence with respect to the step three analysis, because a claimant whose condition meets or equals that of a [l]isting is deemed disabled per se and eligible to receive benefits.").

Accordingly, on remand, ALJ must discuss this evidence in connection with her analysis of Listing 1.04.[2]

### b. Trauma- and Stressor-Related Disorders

Under Listing 12.15—"Trauma- and stressor-related disorders"—a claimant is presumptively disabled if he meets the criteria of both "paragraph A" and "paragraph B," or both "paragraph A" and "paragraph C." Paragraph A requires that the claimant have "exposure to actual or threatened death, serious injury, or violence; subsequent involuntary re-experiencing of the traumatic event (for example, intrusive memories, dreams, or flashbacks); avoidance of external reminders of the event; disturbance in mood and behavior; and increases in arousal and reactivity (for example, exaggerated startle response, sleep disturbance)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.15. Paragraph B requires that the claimant have an "extreme" limitation of one, or "marked" limitation of two of the following areas of mental functioning: the ability to "understand, remember, or apply information," "interact with others," "concentrate, persist or

---

[2] The plaintiff further argues that the ALJ "failed to consider that there was an initial period of time" during which the plaintiff's limitations "would warrant a finding of disability." (ECF No. 11-1 at 20.) However, the ALJ appropriately discounted abnormal findings within 12 months of the accident because "all of the requirements of Listing 1.04(A) must be simultaneously present on examination and continue, or be expected to continue, for at least [twelve] months." *Bell v. Saul*, No. 20-CV-2392, 2021 WL 4248845, at *6 (E.D.N.Y. Sept. 17, 2021) (quoting *Monsoori v. Comm'r of Soc. Sec.*, No. 17-CV-1161, 2019 WL 2361486, at *4 (W.D.N.Y. June 4, 2019)).

maintain pace," and "adapt or manage oneself" (known as "paragraph B criteria"). *Id.* A "marked" limitation means that "functioning in [an] area independently, appropriately, effectively, and on a sustained basis is seriously limited," while in an "extreme" limitation, the claimant is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." *Id.* at § 12.00F2. Paragraph C requires that a claimant have a "serious and persistent" mental disorder—"a medically documented history of the existence of the disorder over a period of at least 2 years"—and evidence of both "medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [the] mental disorder" and "marginal adjustment, that is, . . . minimal capacity to adapt to changes in [the plaintiff's] environment or to demands that are not already part of [his] daily life" (known as "paragraph C criteria"). *Id.* at § 12.15.

The ALJ concluded that the severity of the claimant's mental impairments "do not meet or medically equal the criteria" of Listing 12.15. (Tr. 14.) She explained that the criteria of "paragraph B" were not satisfied because the plaintiff had a "mild" limitation in "understanding, remembering or applying information," a "moderate" limitation in "interacting with others," a "moderate" limitation in "concentrating, persisting or maintaining pace" (*id.*), and a "mild" limitation in "adapting or managing oneself." (Tr. 15.)[3] She also determined that the criteria of "paragraph C" were not satisfied because the evidence did not "establish that the claimant has only marginal adjustment." (*Id.*)

---

[3] A claimant has "slightly limited" functioning with a "mild" limitation, and "fair" functioning with a "moderate" limitation. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F2.

8

The record supports the ALJ's conclusion.[4]  First, there is substantial evidence to support the ALJ's determination that the plaintiff did not have a limitation in understanding, remembering or applying information.  On May 5, 2017, the plaintiff reported that his memory was declining and that he tended to "forget what he has to do and has to write everything down." (Tr. 233.)  At a January 31, 2018 appointment, the plaintiff said that he needed to be reminded to take his medication, that a calendar "helps [him] a lot" (Tr. 183), and that he had to write "everything down" because of his memory problems.  (Tr. 188.)  At the same appointment, however, the plaintiff said that he did not need special help or reminders to take care of his personal needs and grooming.  (Tr. 183.)  According to April 11, 2018 and July 18, 2018 treatment records at the Northport VA Medical Center, the patient's memory was normal.  (Tr. 905, 921.)  At a May 7, 2018 psychiatric evaluation, the examiner determined that there was no evidence that the plaintiff's ability to "understand, remember, or apply simple directions or instructions" was limited.  (Tr. 743.)  The plaintiff showed clear speech, coherent thought process, full range affect, intact orientation, intact attention and concentration with ability to perform simple calculations and serial sevens, intact memory with ability to recall, and average cognition.  (Tr. 742-43.)  In addition, the examiner wrote that the plaintiff's cognitive functioning was normal, and that he had only "mild" limitations in his ability to "understand, remember, or apply complex directions and instructions."  (*Id.*)  During a September 20, 2018 examination, the examiner found that his memory was "intact." (Tr. 821.)  Mental status examinations found that the plaintiff had normal attention and concentration, as well as normal thoughts and cognition.  (Tr. 652, 742-43, 905, 921.)

---

[4] The plaintiff faults the ALJ's analysis of paragraph A criteria (ECF No. 11-1 at 20-21).  Since the plaintiff did not meet paragraph B or paragraph C criteria, the ALJ did not have to analyze paragraph A criteria.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.15.

9

The ALJ's conclusion that the plaintiff was not limited in his ability to interact with people was also supported by the record. The plaintiff was cooperative at his appointments. (Tr. 742, 821.) He lived with his girlfriend (Tr. 43), socialized with other people, visited his mother (Tr. 184), "play[ed] basketball regularly" (Tr. 648), and maintained friendships. (Tr. 743.) As for the plaintiff's claim that he was limited in concentrating, persisting or maintaining pace, examinations demonstrated that he had normal attention and concentration, as well as normal thoughts and cognition. (Tr. 652, 742-43, 905, 921.) He could also drive a car, which requires concentration and persistence. (Tr. 36.) Moreover, the plaintiff was able to "adapt" and "manage" himself; he did household chores (Tr. 183), and according to mental status examinations, had good or fair judgment, insight, and impulse control, as well as normal grooming and hygiene. (Tr. 652, 891-92, 921.) *See also Wavercak v. Astrue*, 420 F. App'x 91, 94 (2d Cir. 2011) (summary order) (the ALJ properly considered activities, "including cleaning, cooking, driving, picking up his son at school, reading, shopping, as well as visiting friends and family").

It is true that NP Richard Thomesen completed a checklist in which he said that the plaintiff had "marked" limitations in "understand[ing] and remember[ing] simple instructions," "carry[ing] out simple instructions," "mak[ing] judgments on simple work-related decisions," "understand[ing] and remember[ing] complex instructions," "carry[ing] out complex instructions," "mak[ing] judgments on complex work-related decisions," "interact[ing] appropriately with supervisors and coworkers," and "respond[ing] appropriately to usual work situations and to changes in a routine work setting." (Tr. 945-46.) But NP Thomesen did not explain the basis for these conclusions, and the ALJ determined the checklist was "wholly inconsistent with the record as a whole, including relatively minor abnormalities on mental status

examination as well as the claimant's routine and conservative treatment history and largely intact activities of daily living." (Tr. 20.)

When an ALJ considers medical opinions, the "more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(2). The ALJ's finding that the checklist was inconsistent with the record is supported by substantial evidence. *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (explaining that when deciding whether substantial evidence exists, the court will "defer to the Commissioner's resolution of conflicting evidence" (quoting *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012))). Indeed, the checklist is also inconsistent with NP Thomesen's other findings. In treatment records from May 20, 2019, he wrote that the plaintiff's attention, concentration, memory and thought process were normal, that his judgment, insight and impulse control were good, and that he did not "display impairment of communication or thought process." (Tr. 895-96.) The day before he filled out the checklist, NP Thomesen wrote that the plaintiff was "hypervigilant" but that his "concentration and memory were normal," and that his "judgment, insight and impulse control were good." (Tr. 891-92.)

    c. **New Medical Listings**

The plaintiff asks that the ALJ consider new Listings 1.15, 1.16 and 1.18 on remand. (*Id.* at 20.) But these listings became effective after the ALJ's decision in December of 2019. *See* 5 Fed. Reg. 78164, 78164 (Dec. 3, 2020). A court can only review the Commissioner's decision using the rules in effect at the time the decision was made. *See, e.g., Graham v. Comm'r of Soc. Sec.*, No. 16-CV-142, 2017 WL 1232493, at *3 n.2 (E.D.N.Y. Mar. 31, 2017) ("The Court

11

applies the Regulations in effect at the time of the ALJ's decision." (citing Revised Med. Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138-01, 66138 n.1 (Sept. 26, 2016))).

## II. The ALJ's RFC Analysis

The plaintiff challenges the ALJ's RFC analysis; he says that the ALJ did not consider his mental impairments and his lack of mental ability to do even unskilled work, his efforts to relieve his symptoms and possible side effects of his medications, and the amount of time he needed to rest between work intervals. (ECF No. 11-1 at 18-19, 21-26.)

An ALJ must evaluate the "combined impact [of the impairments] on a claimant's ability to work, regardless of whether every impairment is severe" when assessing the claimant's RFC. *Dixon v. Shalala*, 54 F.3d 1019, 1031 (2d Cir. 1995); *accord Johnston v. Astrue*, No. 07-CV-5089, 2008 WL 4224059, at *9 (E.D.N.Y. Sept. 8, 2008) ("the ALJ is required to consider all of plaintiff's impairments regardless of their severity" (citing 20 C.F.R. § 404.1545(a)(2))). An ALJ must assess a plaintiff's RFC "based on all the relevant evidence in the case record." *Colegrove v. Comm'r of Soc. Sec.*, 399 F. Supp. 2d 185, 192 (W.D.N.Y. 2005) (citing 20 C.F.R. § 416.945(a)(1)). But it remains the plaintiff's burden "to prove that he should have a more restrictive RFC than the one assessed by the ALJ." *Petrusiello v. Comm'r of Soc. Sec.*, No. 18-CV-6553, 2021 WL 1238713, at *8 (E.D.N.Y. Mar. 31, 2021) (citing *Villalobo v. Saul*, No. 19-CV-11560, 2021 WL 830034, at *16 (S.D.N.Y. Feb. 9, 2021)).

Based on her "careful consideration of the entire record," the ALJ made this determination about the plaintiff's RFC:

> I find that the claimant has the residual functional capacity to occasionally lift and carry 20 pounds and frequently lift and carry 10 pounds. He can sit, stand and walk for 6 hours each in an 8-hour workday. He can occasionally climb ramps, stairs, ladders ropes and scaffolds; balance; stoop; kneel; crouch; and crawl. He must avoid concentrated exposure to hazards, such as heavy machinery, moving mechanical parts, and unprotected heights. The claimant can occasionally push/pull with the left lower extremity. He can understand, remember and carry out simple

12

and routine instructions for 2-hour intervals over the course of an 8-hour workday and 40-hour workweek. He can tolerate occasional interaction with coworkers, supervisors and the general public.

(Tr. 15.)

### a. Mental Abilities

Citing NP Thomesen's checklist, the plaintiff maintains that he does not have the mental ability or aptitude to do unskilled work. (ECF No. 11-1 at 21-23 (citing Tr. 945-46).)

Even if "substantial evidence supports the ALJ's finding that [the plaintiff's] mental impairment was nonsevere," remand would be necessary if the ALJ "failed to account [for the plaintiff's] mental limitations when determining her RFC." *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (summary order); *see also Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 740 (S.D.N.Y. 2018) ("Although the ALJ's finding that plaintiff's mental impairments were not severe was supported by the record, the ALJ did err in failing to consider plaintiff's mental impairments in determining plaintiff's RFC and in the hypothetical posed to the vocational expert.").[5]

The ALJ accounted for the plaintiff's mental limitations in her RFC analysis. She cited the record evidence of the plaintiff's "medical history of depression and PTSD" (Tr. 19), as well as examinations, medications and therapy sessions. (*Id.* at 19-20.) Based on her review of the record, she found "unremarkable appearance, behavior, thoughts, speech, and orientation," "no

---

[5] "A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce [a person's] ability to do past work and other work." 20 C.F.R. § 416.945(c). The basic demands for unskilled work include the abilities to: "understand, carry out, and remember simple instructions," "make judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions," "respond appropriately to supervision, coworkers and work situations" and "deal with changes in a routine worksetting." SSA Program Operations and Manual System ("POMS") DI 25020.010. A "substantial loss" of ability to meet these demands "would justify a finding of inability to perform other work even for persons with favorable age, education and work experience." *Id.*

evidence of psychiatric hospitalization or episodes of decompensation," and no "abnormal cognition, communication, perception, or thought process." (*Id.* at 20.) The ALJ concluded that "medical evidence and the claimant's treatment history do not support the degree of symptoms and functional limitations alleged by the claimant," and "accounted for these impairments through the mental limitations contained within the residual functional capacity." (*Id.*) She also reviewed the medical opinions of NP Thomesen, psychiatrist Larry Needle, the state agency psychological consultant and the State Disability Determination Service medical consultant, and then determined whether their opinions were supported by and consistent with the evidence, as required by 20 C.F.R. § 404.1520c(b)(2). (*Id.* at 20-21.)

The record also supports the ALJ's determination that the plaintiff could "understand, remember and carry out simple and routine instructions for 2-hour intervals over the course of an 8-hour workday and 40-hour workweek," and that he could "tolerate occasional interaction with coworkers, supervisors and the general public." (Tr. 15.) As explained above, the record shows that the plaintiff had a normal memory, normal thoughts and cognition, normal attention and concentration, and clear speech. He was cooperative at his appointments, socialized with other people, and could drive a car. The plaintiff could also do household chores, control his impulses, and had normal grooming and hygiene.

### b. Mental Impairments

The plaintiff also challenges the decision that his depressive disorder and PTSD "do not cause more than minimal limitation . . . and [are] therefore non-severe;" he claims that the ALJ violated Social Security Ruling ("SSR") 96-8p, which prohibits an ALJ from finding non-severity as a substitute for proper RFC analysis. (ECF No. 11-1 at 23-24.)

The ALJ concluded that the plaintiff's impairments "more than minimally affect his ability to engage in work related activities." (Tr. 20.) However, she was "not persuaded that the

14

degree of impairment renders him disabled," because the record as a whole establishes only "mild to moderate" mental limitations that meet the "*de minimis* severity requirement." (*Id.*) In other words, she did not conclude that either impairment was "non-severe;" she found that these impairments met the *de minimis* severity requirement. (*Id.*) The record, which includes a May 7, 2018 psychiatric examination that determined the plaintiff had PTSD (Tr. 743), and evidence that the plaintiff was prescribed Duloxetine and Trazodone, and attended multiple therapy sessions in 2018 and 2019 (Tr. 890, 894, 900, 907, 916), supports the ALJ's conclusions. The ALJ included specific limitations in her RFC finding that reflect the plaintiff's mental impairments, determining that the plaintiff could understand, remember and carry out only "simple and routine instructions for 2-hour intervals," and that he could tolerate only "occasional interaction with coworkers, supervisors and the general public." (Tr. 15.)

Arguing that an RFC must be defined in specific, work-related terms as required under SSR 96-8p, the plaintiff says that the ALJ improperly characterized his mental limitations as "moderate." (ECF No. 11-1 at 24.) But the ALJ did not use the word "moderate" in her determination of the plaintiff's RFC. (Tr. 15.) Instead, in explaining how she arrived at the RFC, the ALJ said that she considered the patient's "medical history of depression and PTSD" (Tr. 18), as well as the evidence described above, and found that the evidence did not "tend to support the claimant's allegations of disabling impairments, as it reflects a history of only mild to moderate symptoms with somewhat effective treatment," that the record reflects "no evidence of psychiatric hospitalization or episodes of decompensation," and that "mental status examinations throughout the record have been benign." (Tr. 18-19.) She concluded that "the objective medical evidence described above indicates that the claimant has some limitations due to his impairments," and that "the assessed limitation to light work with the additional limitations

15

contained in the residual functional capacity is consistent with the medical evidence of record." (Tr. 19.) The plaintiff does not explain why that is improper. *Cf. Matta v. Astrue*, 508 F. App'x 53, 55 (2d Cir. 2013) (summary order) (rejecting the plaintiff's argument that "the record contains insufficient evidence to support the ALJ's determination of plaintiff's residual functional capacity" when the record included findings that plaintiff had "moderate difficulties in concentration, persistence and pace" and "moderate difficulties in social functioning").

### c. Efforts to Relieve Symptoms

Next, the plaintiff takes issue with the ALJ's determination that his statements about the intensity, persistence and limiting effects of his pain and symptoms were not consistent with the evidence; he claims that his "continuous and persistent efforts to seek treatment and relief of pain and other symptoms should strengthen the credibility of his testimony." (Tr. 11-1 at 24.)

An ALJ is permitted to consider other evidence "to evaluate only the factors that are relevant to assessing the intensity, persistence, and limiting effects of the individual's symptoms." SSR 16-3p. Other evidence may include the claimant's "daily activities," "treatment, other than medication, an individual receives or has received for relief of pain or other symptoms," and "any measures other than treatment an individual uses or has used to relieve pain or other symptoms." 20 C.F.R. § 416.929(c)(3). "Persistent attempts to obtain relief of symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent." SSR 16-3p.

The ALJ determined that the record "does not tend to support the claimant's allegations of disabling impairments, as it reflects a history of only mild to moderate symptoms with generally effective treatment." (Tr. 18.) Moreover, the ALJ did consider the plaintiff's efforts to

16

seek treatment, observing that the plaintiff "sought treatment for pain" after the onset date and had testing including an MRI. (Tr. 16-17.) She noted that the plaintiff "regularly participated in the recommended therapy throughout 2017 with benefit," which included acupuncture, medication and injections. (Tr. 17.) During 2017, the plaintiff did physical therapy at Dynamic Core Physical Therapy (Tr. 257-440), and had chiropractic treatments at Brenner Chiropractic PC. (Tr. 460-621.) He also received injections on August 17, 2017, September 14, 2017, October 26, 2017 and November 30, 2017 (Tr. 840-43), and had an MRI on May 11, 2017. (Tr. 724-29.) One examiner described his neck and low back pain as "currently moderate" and "improving with conservative therapy" and NSAIDs, with full strength and sensation. (Tr. 704-05.) At a March 12, 2018 examination, the plaintiff said he had a "dull" and "localized" knee pain, but that he was "fairly active and plays basketball regularly." (Tr. 647-78.) An MRI that day showed mild prepatellar edema, mild patellar tendinosis and mild chondromalacia. (Tr. 687-88.) Accordingly, there is substantial evidence to support for the ALJ's findings.

### d. Possible Side Effects

The plaintiff argues that the ALJ did not take into account the possible side effects of the plaintiff's medication on his functional limitations. (ECF No. 11-1 at 26.) He cites no actual evidence of side effects, but speculates that side effects are "possible." (ECF No. 11-1 at 26.) If there is "no information in the evidence of record regarding one of the factors," an ALJ will not "discuss that specific factor" because it is not relevant to the case. SSR 16-3p. Since there was no evidence that the plaintiff suffered from any side effects, there was no need to discuss side effects in the ALJ's decision. *See, e.g.*, *Mupenzi v. Comm'r of Soc. Sec.*, No. 19-CV-183, 2020 WL 4047477, at *5 (W.D.N.Y. July 20, 2020) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work . . . ." (internal citation omitted)).

17

### e. Rest Breaks

The plaintiff argues that the ALJ's determination that he could "understand, remember and carry out simple and routine instructions for 2-hour intervals over the course of an 8-hour workday" means that he also needed "a break in between intervals," which is "crucial to determine the amount of time that the Plaintiff would be off-task in a workday." The plaintiff maintains that neither the ALJ nor the vocational expert considered these breaks. (ECF No. 11-1 at 18-19.)

But the ALJ was simply describing the customary breaks allowed in unskilled employment. Thus, she observed that "in unskilled positions, they work two hours, have a break, work two hours, have lunch, work two hours, have a break, work two hours and then at the end of the day." (Tr. 56.) "Normal work breaks and meal periods split an eight hour workday into approximately two hour periods." *Josielewski v. Berryhill*, No. 15-CV-00728, 2018 WL 903471, at *4 (W.D.N.Y. Feb. 15, 2018) (quoting *Swain v. Colvin*, No. 14-CV-00869, 2017 WL 2472224, at *3 (W.D.N.Y. June 8, 2017)) (alterations omitted); *see also* SSA POMS 25020.010(B)(2)(a) (requiring that for any job that involves "understanding, carrying out, and remembering simple instructions," an individual must have the "ability to maintain concentration and attention for extended periods (the approximately 2–hour segments between arrival and first break, lunch, second break, and departure)"). There was no error in this aspect of the ALJ's decision.

## CONCLUSION

For the reasons above, the plaintiff's motion for judgment on the pleadings is granted in part, and the defendant's motion is denied. The case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

                                                                      s/Ann M. Donnelly
                                          _____
                                          ANN M. DONNELLY
                                          United States District Judge

Dated: Brooklyn, New York
        March 15, 2022